UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

Case No. GL 11-08217
Chapter 7

MARK ANTHONY HALE and
MARY ELLEN HALE,

Debtors.

_____/

## OPINION RE:  (1) DEBTORS' REQUEST TO CONVERT FROM CHAPTER 7 TO CHAPTER 13; AND (2) DEBTORS' POTENTIAL EXEMPTION CLAIM IN CERTAIN REAL PROPERTY

Appearances:

Robert W. Dietrich, Esq., Lansing, Michigan, attorney for Debtors.

Kevin M. Smith, Esq., Rochester Hills, Michigan, attorney for Kelly M. Hagan, Trustee.

Lawrence S. Gadd, Esq., Plymouth, Michigan, attorney for Patriot Restoration, LLC.

## I. JURISDICTION

This court has jurisdiction over this chapter 7 bankruptcy case and all proceedings and contested matters.  28 U.S.C. § 1334.  This case and all related proceedings have been referred to this court for decision.  28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D. Mich.).  The matters before the court are core proceedings.  28 U.S.C. § 157(b)(2)(A) (administration of estate) and (B) (allowance or disallowance of exemptions).  This summary opinion constitutes the court's findings of fact and conclusions of law.  FED. R. BANKR. P. 7052.

## II. FACTS

The facts are based upon the court's docket and the pleadings and papers filed by the parties in this case. Judicial notice of the court's file is appropriate in this instance. FED. R. EVID. 201. See Alofs Mfg. Co. v. Toyota Mfg. Kentucky, Inc. (Matter of Alofs Mfg. Co.), 209 B.R. 83, 96 n. 9 (Bankr. W.D. Mich. 1997); accord In re Brown, 293 B.R. 865, 868 n. 9 (Bankr. W.D. Mich. 2003) (court takes judicial notice of pleadings and papers in its file to determine bad faith conversion from chapter 7 to chapter 13).

This chapter 7 bankruptcy case has a long and checkered history. Mark Anthony Hale and Mary Ellen Hale ("Debtors") filed their bankruptcy petition under chapter 7 on August 3, 2011. (DN 1.) The Debtors' attorneys, the Dietrich Law Firm ("Dietrich"), were paid $1,051.00 to advise the Debtors and file the chapter 7 petition on their behalf. (See Disclosure of Compensation of Attorney for Debtors, DN 2.)

In their original schedules, filed with their petition, the Debtors listed real property located in Munith, Michigan as property of the estate. No other real property was listed. (DN 1.) On Schedule G, pertaining to unexpired leases, the Debtors listed a "month to month lease from Mark's (one of the Debtors) father" relating to Stockbridge, Michigan real property. The father is stated to be Buck Hale. (DN 1.) On Schedule J, pertaining to the Debtors' expenditures, the monthly rent payment is stated to be $750.00. (DN 1.)

The Debtors also disclosed that their residence, and the contents thereof, was damaged by fire on May 15, 2011. Insurance covered $40,000.00 in losses. (Statement of Financial Affairs, ¶ 8, DN 1.) On their Schedules, there is no disclosure that Mark Hale actually is a co-owner of the Stockbridge, Michigan real property (a

2

house and 100 acres).   The Debtors each signed their petition, Schedules, and Statement of Financial Affairs under penalty of perjury.  (DN 1.)

Kelly Hagan ("Trustee") filed her Report of First Meeting of Creditors on September 14, 2011.  (DN 12.)  The Trustee subsequently gave Notice of Possible Dividends to Creditors on September 21, 2011.  (DN 14.)  Later, on September 28, 2011, the Trustee filed her application to employ an attorney for the estate.  (DN 18.)  For some unknown reason, the predecessor bankruptcy judge delayed signing and entering the Trustee's attorneys' appointment order until November 2, 2011.  (DN 31.)  This successor judge has treated the appointment order as being effective *nunc pro tunc* to the date of the Trustee's application.

On October 19, 2011, the Trustee filed a Motion to Compel Debtors to Turnover Property of the Estate.  (DN 24.)  The motion pertained to the Debtors' claim to, or receipt of, $40,000.00 in postpetition fire insurance proceeds.  On November 17, 2011, the predecessor judge adjourned the hearing pertaining to the requested turnover to January 13, 2012.  The undersigned judge was to preside over the Lansing bankruptcy docket on January 2, 2012, and he assumed those duties as scheduled.

On October 28, 2011, the Debtors filed an Amended Schedule C and an Amended Statement of Financial Affairs.  (DN 26.)  Two things are noteworthy:  First, Schedule B was not amended to disclose co-ownership of the Stockbridge, Michigan "leased" property and, second, no exemption on Schedule C was listed regarding the Stockbridge, Michigan real property.

Also on October 28, 2011, the Debtors responded to the Trustee's motion for turnover of the $40,000.00 in insurance proceeds.  The Debtors asserted, as of the

3

petition date, they had an equitable interest in the fire insurance proceeds and that the proceeds to be received would be for replacement of otherwise exempt household goods and furniture.   (DN 27.)   Because the Debtors' Amended Schedule C first formally claimed the fire insurance proceeds as exempt, the Trustee timely objected to the amended exemption claimed in the fire insurance proceeds.  (DN 34.)

During this timeframe, the Trustee also filed another motion for turnover pertaining to "requested information." (DN 34.)  After a hearing eventually took place, the court entered its Order Denying Trustee's Motion to Compel Debtors to Turnover Property of the Estate [Documents].  (DN 53.)  On the record, the court noted that the Trustee's request was not really for turnover of documents but was based upon the asserted failure by the Debtors to cooperate in case administration.

On February 23, 2012, the Trustee's Motion for Approval of Settlement Agreement With Debtors Resolving the Estate's Interest in Insurance Proceeds was filed and served.  (DN 56.)   In that motion, the Trustee requested approval of a settlement whereby the estate would receive $3,151.70 (with $2,000.00 paid in equal monthly installments of $85.00 per month) and the balance of the insurance proceeds would belong to the Debtors as exempt property.  On March 28, 2012, the court entered an order approving that settlement.  (DN 58.)

Next, apparently without *any* prior disclosure by the Debtors or Dietrich, the Trustee discovered the Debtors actually had an *ownership interest* in the Stockbridge real property, rather than merely leasing the property from Buck Hale.  Therefore, yet another turnover motion by the Trustee was necessary.  On July 24, 2013, nearly two years after the bankruptcy petition was filed, the Trustee filed a motion for turnover

4

regarding the Stockbridge, Michigan real property.  (DN 67.)  The Trustee alleged that in February 2009, Buck Hale conveyed the Stockbridge, Michigan real property to himself and Debtor Mark Hale, his son, as joint tenants with rights of survivorship.  Attached to the Trustee's motion were copies of three deeds recorded on December 3, 2009.  Also, in this turnover motion, the Trustee alleged that Debtor Mark Hale, with Buck Hale, obtained insurance on the real property and they were jointly covered on the property. (DN 67.)  In the motion, the Trustee also alleged that a postpetition fire relating to the real property took place on or about May 15, 2011, which destroyed the premises. Approximately one month later, Debtor Mary Hale executed a work authorization on behalf of her husband as the "insured."  Based upon its review of the record, the court notes that none of this information was disclosed by the Debtors at the § 341 meeting with the Trustee.  Although there may have been a *partial* disclosure of the fire, it is apparent the Debtors did not adequately disclose the identity of the real property at which the fire took place and the fact Mark Hale was a co-owner.

The bankruptcy soap opera continued.  Buck Hale filed a complaint in the State of Michigan, County of Ingham Circuit Court to set aside his deed to his son, Debtor Mark Hale.  Later, Buck Hale voluntarily dismissed the state court lawsuit.  Also, Debtor Mary Hale sought and received a Personal Protection Order, from the Ingham County Circuit Court, barring Buck Hale from "following" her or "threatening to kill or physically injure" her.  (See attachments to Debtors' Response to motion for turnover, DN 71.)

On September 11, 2013, this judge issued his Scheduling Order Regarding Trustee's Motion to Compel Turnover [regarding the Stockbridge, Michigan real property].  (DN 74.)  An evidentiary hearing date was scheduled for December 5, 2013,

5

at 9:00 a.m. In accordance with the scheduling order, the Debtors and the Trustee filed their respective exhibits lists, witness lists, and legal memoranda. Two days before the scheduled hearing, the parties settled the contested matter. They agreed that "the Debtors' interest in the Real Property described as 4200 Morton Road, Stockbridge, MI 49285 consisting of approximately 100 acres which is reflected in the Deeds attached to the Motion is property of this bankruptcy estate pursuant to 11 U.S.C. § 541 including Mark Hale's interest in the real property as a joint tenant with Buck Hale with full rights of survivorship and any dower or other interest that may be claimed by Mary Hale in the Real Property." The court then entered its order resolving the contested matter. (DN 85.)

Meanwhile, the Trustee learned of unpaid real property taxes on the Stockbridge, Michigan real estate. The Trustee filed a motion to pay the real estate taxes. (DN 86.) On January 8, 2014, the Debtors replied to the Trustee's motion and asserted the real estate taxes had already been paid. (Why Dietrich did not just pick up the phone and talk to the Trustee's attorney about this is a curious matter.) Subsequently, at a hearing on January 31, 2014, the court granted the Trustee's Motion for Authority to Make Interim Distribution to Pay Real Estate Taxes. (DN 91.) Also, this order permitted a division of "lease proceeds." The court believes that these proceeds may have been from land rent pertaining to the Stockbridge, Michigan real property, although the current record is unclear. The order provided that the 2013 winter taxes, in the amount of $2,831.27 would be paid from the lease proceeds, with the balance of the lease proceeds evenly divided between the Trustee and Buck Hale, "with Buck Hale receiving

6

the sum of $1,909.37 and the bankruptcy estate retaining the sum of $1,909.36." (DN 91.)

On February 28, 2014, the Trustee's Ex-Parte Application for Authority to Employ Real Estate Agent was filed. (DN 92.) Unsurprisingly, the Debtors, through Dietrich, again objected. The Debtors' Objection to the Trustee's *Ex Parte* Application for Authority to Employ Real Estate Agent was filed on March 10, 2014. (DN 93.) In this objection, the Debtors asserted they were seeking funding to purchase the estate's interest in the real property and therefore "there is no necessity for the agent's employment to sell the Real Property at this time." (DN 93.) The court scheduled this contested matter for hearing on April 11, 2014, at 10:00 a.m., in the Lansing bankruptcy courtroom. The parties agreed that the hearing would be adjourned until May 2, 2014, at 10:00 a.m., and the court signed the adjournment order. (DN 97.)

So now what? After the originally scheduled hearing date regarding the appointment of the real estate agent, but before the adjourned hearing date, the Debtors filed a new motion. On April 14, 2014, the Debtors filed a form Motion to Convert Case From Chapter 7 to Chapter 13. (DN 100.) One week later, the court reviewed the motion and determined, on its own initiative, that a hearing regarding the requested conversion to chapter 13 should take place. The court scheduled a hearing because it had a number of concerns, based upon the entire history of the Debtors' actions and non-actions in this case, about whether the requested conversion to chapter 13 was in good faith or was intended to frustrate the Trustee in her efforts to market and eventually sell the Stockbridge, Michigan real property.

Coincidentally, on the same date, but shortly after the court's notice, a Trustee's Brief in Opposition to Debtors' Motion to Convert Case to Chapter 13 was filed. (DN 103.) Without summarizing the Trustee's brief, it was asserted that the Debtors lacked good faith in their conversion request and it was pointed out that the Debtors' Schedules I and J disclosed a disposable net income of a *negative* $195.74. Thus, it appeared impossible for the Debtors to fund *any* chapter 13 plan.

A "new" creditor, Patriot Restoration, L.L.C., also concurred with the Trustee's response and objected to the Debtors' conversion request. (The word "new" is used because the creditor had not been listed on the Debtors' original or amended schedules; the creditor asserted it had not been paid for the restoration work it did, pursuant to one, or both, of the Debtors' requests, on the fire damaged property.) Finally, Buck Hale, *in pro per*, filed his Objection to Conversion to Chapter 13. (DN 106.) Attached to his objection is an affidavit which sets forth his version of many relevant facts concerning his relationship with the Debtors. In his affidavit, he concludes: "I will be turning 81 years old on May 8, 2014, and at this point the farm must be sold and the value of my one-half interest paid to me so I can support myself and my wife, as my finances have been drained due to Mark and Mary Ellen's [the Debtors'] actions." (Affidavit, p. 3, DN 106.) Based upon Buck Hale's objection and affidavit, he has consented to the sale of his co-owner's interest in the Stockbridge, Michigan real property.

On May 2, 2014, the hearing was held regarding the Debtors' Motion to Convert Case to Chapter 13. (DN 100.) At that hearing, the attorneys for the Debtors, Patriot

8

Restoration, and the Trustee appeared.  In addition to her attorney, the Trustee also personally appeared.  Both Debtors also attended the hearing.

After listening to comments, suggestions, and some limited argument by opposing counsel, the court determined to issue a scheduling order.  Because the Trustee questioned the Debtors' good faith in connection with the case, and specifically with regard to their Motion to Convert, the court also discussed the issue of a possible amendment to the Debtors' exemptions.  Assuming the Debtors were in "bad faith" regarding their Motion to Convert, would they also not be in "bad faith" if they amended their exemptions to finally list the Stockbridge, Michigan real property on Schedule C? The court therefore determined to establish a deadline by which the Debtors were required to amend their schedules to disclose their interest (on Schedule B) and claim any purported exemption in the real property located in Stockbridge, Michigan (on their Schedule C).  If the Debtors timely amended their exemptions to include the real property on Schedule C, the Trustee would be required to file an objection to the amended exemption by a date certain; if the Trustee failed to object, the amended exemption would be valid and binding upon the estate.

On May 9, 2014, the court issued its Scheduling Order Regarding Debtors' Motion to Convert Case From Chapter 7 to Chapter 13.  (DN 112.)  The scheduling order required the parties to meet established deadlines regarding further possible amendments, possible objections, exchange of witness lists, exchange and filings of exhibits, and filing of permissive legal memoranda.  The evidentiary hearing date regarding the Debtors' Motion to Convert was scheduled to take place on June 16, 2014 in Grand Rapids, Michigan.  Also, in the event the Debtors timely filed an amended

9

Schedule C to claim an exemption in the Stockbridge, Michigan real property, *and* the Trustee or another party-in-interest filed an objection to the amended exemption, an evidentiary hearing regarding the amended exemptions would also take place on the same date and time in Grand Rapids, Michigan.

Seven days after the hearing, and on the same date the court issued its scheduling order, the Debtors filed amended Schedules A, B, and C.  (DN 114.)  Finally, approximately two years and nine months after the bankruptcy was filed, the Debtors disclosed Mark Hale's co-ownership interest with Buck Hale in the Stockbridge, Michigan real property.  In Mark Hale's amended Schedule C, he claimed an exemption in the amount of $10,800.00, pursuant to 11 U.S.C. § 522(d)(1), in the Stockbridge, Michigan real property.  Mary Hale also amended her Schedule C and claimed an exemption in the Stockbridge, Michigan real property in the amount of $14,698.29.  She based her exemption upon her asserted one-third dower interest in the real property. The Debtors' respective Schedule C amendments were timely in accordance with the deadline established by the prior scheduling order.

On May 13, 2014, the Trustee's Objection to Debtors' Claimed Exemptions in Real Property was filed.  (DN 117.)  The Trustee objected to *both* of the Debtors' amended claimed exemptions in the real property "on the grounds that the amendments are in bad faith, prejudicial to creditors and laches." (DN 117.)  Also, with regard to Mary Hale's claimed exemption based upon her dower interest, the Trustee objected, and cited legal authorities to support her position.  The Trustee's objection to the Debtors' claimed exemptions in the Stockbridge, Michigan real property was timely in accordance with the court's prior scheduling order.

During the last two weeks of May, 2014, this court spent a considerable amount of time preparing for the evidentiary hearing regarding both the Motion to Convert and the Trustee's objection to the Debtors' amended Schedule C.  On June 2, 2014, a succinct Notice of Withdrawal was filed by the Debtors.  It simply states:  "The Debtors hereby withdraw the amended Schedule [sic] C (DN 114 at 5-8) that were filed on May 9, 2014."   This withdrawal is somewhat ambiguous inasmuch as two amended Schedules C were filed.   The court treats the pleading as withdrawing *both* of the Debtors' amended Schedules C.

Next, on June 4, 2014, a Stipulation to Dismiss the Debtors' Motion to Convert Case to Chapter 13 With Prejudice was filed.  (DN 121.)  This stipulation was signed by the Trustee's attorney and by Dietrich, on behalf of the Debtors.  It was also signed by the attorney for Patriot Restoration, L.L.C. and by Buck Hale, *in pro per*.  No order dismissing the Motion to Convert has yet been signed by the court because no proposed order was submitted.

The undersigned judge will soon be leaving the bench and completing his judicial responsibilities on June 27, 2014.  A successor judge will assume his duties and take responsibility of this case, and any pending contested matters.  Although the Motion to Convert will not be renewed because of the dismissal with prejudice, unless a ruling is made on the Debtors' claimed exemptions (now withdrawn) in the Stockbridge, Michigan real property, some confusion may arise and a waste of judicial resources may occur.  The court has therefore determined to render this opinion and enter appropriate orders.

11

## III. DISCUSSION

### A. *The Debtor's Motion to Convert.*

The Supreme Court has held a bankruptcy court may deny a motion to convert when there is "fraudulent conduct by an atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 374-75, 127 S.Ct. 1105, 1111 (2007) (Stevens, J). The denial, or forfeiture, of a debtor's requested conversion from chapter 7 to chapter 13 must be based upon a finding of "bad faith" or "atypical conduct in factually extraordinary cases." Marrama, 549 U.S. at 375, 127 S.Ct. at 1112 n. 11.

The atypical conduct in Marrama included the debtor's nondisclosure of a real estate transfer of his residence to a revocable trust, his attempt to exempt rental property under the homestead exemption, and nondisclosure of an anticipated tax refund. Marrama, 549 U.S. at 370, 127 S.Ct. at 1109. These circumstances established "bad faith" and negated any "Oops" defense because of the debtor's concealment of assets. Id.

Nearly four years before Marrama, this court held that lack of good faith, based upon the debtor's manipulation of the bankruptcy system and "thwarting the chapter 7 trustee's attempts to administer the bankruptcy estate," would result in a denial of a motion to convert from chapter 7 to chapter 13. In re Brown, 293 B.R. 865, 871 (Bankr. W.D. Mich. 2003) ("indicia of bad faith and abuses of the bankruptcy process . . . justify denial of [the debtor's] motion to convert"). In Brown, the pro se debtor failed to appear at multiple § 341 meetings; then, after the U.S. Trustee obtained a court order to compel attendance, the debtor refused to answer questions; when the trustee sought to have

12

the real property shown by the court-appointed realtor, the debtor denied access on multiple occasions; after a court hearing and a court order permitting access to the property, the debtor filed a motion to prevent sale of the real estate which, after a hearing, was denied; after the trustee moved to sell the property for $136,500.00 (which was approximately $40,000.00 more than the debtor's $95,400.00 valuation on his Schedule A), the debtor again refused to allow the proposed buyer to inspect the interior of the property; even though the buyer could not inspect the property, the court ultimately approved a final reduced purchase price of $131,500.00 and an order was entered.  Then, to attempt to thwart the sale closing, the debtor moved to convert to chapter 13, notwithstanding that he lacked sufficient regular income.

In Brown, the court denied the conversion after noting a split of authority interpreting 11 U.S.C. § 706(a) ("The debtor may convert a case under this chapter [7] to a case under chapter 11, 12 or 13 of this title at any time . . . .").  This court relied upon prior persuasive decisions which permitted denial of conversion based upon bad faith or egregious circumstances.  Brown, 293 B.R. at 869-70 (citing cases).  Brown, as well as many other cases, denied conversion based upon the "atypical" conduct by a debtor, although not solely based upon the § 105 power used in Marrama.

In this particular case, the Debtors have engaged in unquestionably atypical conduct and forfeited their ability to convert from chapter 7 to chapter 13.  The Debtors failed to disclose Mark Hale's co-ownership of real property which was belatedly scheduled and valued at $172,550.00; the Debtors erroneously stated they leased the property from Buck Hale, the co-owner; the Debtors first opposed the Trustee's motion for turnover of the property then, shortly before commencement of the evidentiary

13

hearing, capitulated and agreed Mark Hale co-owned the property; the Debtors made an incomplete partial disclosure regarding the $40,000.00 fire insurance proceeds which again resulted in scheduling an evidentiary hearing; the Debtors objected, without any valid reason, to appointment of a realtor to market the real property thereby necessitating yet another hearing; and, finally, the Debtors filed their Motion to Convert, without any possibility of proposing a chapter 13 plan because of their negative disposable income.

This conduct, including the nondisclosure and the prior litigation tactics, is "atypical" and, without serious question, constitutes bad faith.  These Debtors have acted similarly to the debtor in the <u>Brown</u> case and the debtor in the <u>Marrama</u> case.

Based upon these exceptional circumstances, the court finds these Debtors have acted in bad faith and have attempted to manipulate the case administration process to abuse the bankruptcy system.

Twelve days before the evidentiary hearing regarding the Motion to Convert to Chapter 13 commenced, the Debtors' stipulated the motion would be dismissed with prejudice.  Given the stipulation, why would this court review the record to find "bad faith?"  The answer is that bad faith is also a very important factor relating to the exemption issues (Part B below) and the conduct of Dietrich (Part C below).  Because the parties failed or neglected to submit a proposed dismissal order with their stipulation, the court will prepare and docket the necessary order.

B.      *The Debtors' Possible Exemption in the Real Property.*

The Debtors filed their chapter 7 case on August 3, 2011.  They failed to disclose Mark Hale's ownership interest in the Stockbridge, Michigan real property.  The real

14

property was not listed as exempt on Schedule C.  At the First Meeting of Creditors, the Debtors (and Dietrich) did not inform the Trustee of the ownership interest.

On October 28, 2011, the Debtors filed their Amended Schedule C and an Amended Statement of Financial Affairs.   Again, the ownership interest in the Stockbridge, Michigan real property was not disclosed.

Sometime before July 24, 2013, the Trustee discovered that Mark Hale had an ownership interest in the real property.  The Trustee filed a turnover motion regarding the property.  At no time before this motion did the Debtors amend their schedules to disclose the ownership interest.

Only after the court issued its scheduling order which set an evidentiary hearing date for December 5, 2013, did the Debtors concede Mark Hale had an ownership interest in the Stockbridge, Michigan real property.  The concession was made two days before the evidentiary hearing.  The court subsequently entered its order approving the stipulated resolution of the turnover matter.  (DN 85.)  After the court order, the Debtors again failed to amend their schedules to list the ownership interest.  Likewise, no claim of exemption was made by the Debtors regarding the real property.

After the Trustee sought to appoint a realtor and after the Debtors filed an objection to the appointment, but before the adjourned hearing on the objection, the Debtors filed their motion to convert the case from chapter 7 to chapter 13.  (DN 100.) Prior to, or at the time of this motion on April 14, 2014, the Debtors had not amended their schedules to list the real property or claim it as exempt.  The Debtors also failed to amend their Schedules I and J which, taken together, showed a *negative* disposable income.

15

On May 2, 2014, at the initial hearing regarding the motion to convert, the court scheduled an evidentiary hearing. For reasons stated in open court, and per the subsequent scheduling order, the Debtors were required to list any claimed exemption of the Stockbridge, Michigan real property (still not listed on the schedules) on or before May 12, 2014.

On May 9, 2014, two years and nine months after the case was filed, the Debtors finally filed amended Schedules A, B and C. The Stockbridge, Michigan real property was listed on Schedule A; Mark Hale also finally listed a $10,800.00 ownership exemption in the real property on Schedule C.

On her Amended Schedule A, Mary Hale also claimed a $14,698.29 exemption. She described her interest in the real property as "Debtor's 50% Interest Includes Spouse's 1/3 dower interest in property." (Mary Hale's Amended Schedule C, DN 114.)

As one might expect, the Trustee objected to both Debtors' claimed exemptions in the real property. Therefore, both the conversion motion and the exemption issues would be determined by the court at the June 16, 2014 evidentiary hearing.

Not to be. On June 2, 2014, both Debtors withdrew their respective Amended Schedules. Then, on June 4, 2014, the Stipulation to Dismiss the Debtors' Motion to Convert Case to Chapter 13 With Prejudice was filed. The court cancelled the June 16, 2014 evidentiary hearing.

The Bankruptcy Code requires that a "debtor shall file a list of property that the debtor claims exempt under [§ 522(b)]." 11 U.S.C. § 522(l). See also FED. R. BANKR. P. 4003(a) (same). A debtor may freely amend his or her exemption listing. Lucius v. McLemore, 741 F.2d 125, 126-27 (6th Cir. 1984) (exemptions may be amended "as a

16

matter of course at any time before the close of the case"). See also FED. R. BANKR. P. 1009(a) (general right to amend). When a debtor amends an exemption, it relates back to the bankruptcy case filing date. In re OBrien, 443 B.R. 117, 130-31 (Bankr. W.D. Mich. 2011) (citing, inter alia, White v. Stump, 266 U.S. 310, 45 S.Ct. 103 (1924); Armstrong v. Peterson (In re Peterson), 897 F.2d 935, 937 (8th Cir. 1990); Lasich v. Estate of A. N. Wickstrom (In re Wickstrom), 113 B.R. 339, 343-44 (Bankr. W.D. Mich. 1990)).

However, amended exemptions are not always permitted. When a timely objection is lodged by a party-in-interest, most often a trustee, the objecting party "has the burden of proving that the exemptions are not properly claimed." FED. R. BANKR. P. 4003(c). The bankruptcy court, using a preponderance of evidence standard, will consider the entire record and governing legal authority to determine whether the amended exemption is valid and permitted. In re Millsaps, 774 F.2d 1163, 1985 WL 13737, at *1 (6th Cir. 1985) (unpublished table opinion); accord In re OBrien, 443 B.R. at 140. "Courts may still refuse to allow [an amended exemption] where the debtor has acted in bad faith or where property has been concealed." Lucius v. McLemore, 741 F.2d at 127. Whether a debtor has amended an exemption in bad faith "is determined by an examination of the totality of the circumstances." Moyer v. Hollinshead (In re Hollinshead), 438 B.R. 354, 2010 WL 727969, at *3 (6th Cir. BAP 2010) (unpublished table opinion); accord In re OBrien, 443 B.R. at 141.

The Debtors in this case failed to disclose the Stockbridge, Michigan real property at or before the § 341 meeting. Such a disclosure might well have "negate[d]

an indication of intent to conceal." In re OBrien, 443 B.R. at 141 (citing Doan v. Hudgins (In re Doan), 672 F.2d 831, 833-34 (11th Cir. 1982)).

An amended exemption may be denied when a trustee and the bankruptcy estate will be unfairly prejudiced. In re OBrien, 443 B.R. at 142-43 (citations omitted). It should be noted that a simple delay, by itself, will not constitute prejudice. OBrien, 443 B.R. at 143 (citing In re Doan, 672 F.2d at 833). This case does not merely involve a simple delay.

Examining the totality of circumstances, OBrien, 443 B.R. at 141, the court finds the Debtors to be in bad faith. The court also finds that the Trustee, and the creditors of this estate, have been prejudiced by the multiple delays and the litigation tactics utilized by Dietrich. OBrien, 443 B.R. at 142-43.

Also, the court, in its prior scheduling order, established a firm deadline for the Debtors to claim an exemption regarding the Stockbridge, Michigan real property. Exemptions were timely claimed and then withdrawn. The deadline has passed. It is now too late to again seek to claim any possible exemption in the real property.

An order will be entered which prohibits the Debtors from seeking to exempt the Stockbridge, Michigan real property.

C.  *What Now? How These Circumstances Could Have Been Avoided and Possible Sanctions.*

It is a debtor's duty to file a schedule of assets and liabilities. 11 U.S.C. § 521(a)(1)(B)(i). When schedules are filed, a Declaration Concerning Debtor's Schedules is also filed. See Official Form 6 – Declaration. A debtor declares "under penalty of perjury that I have read the . . . schedules . . . and they are correct to the best

18

of my knowledge, information and belief." Id. In this case, the Debtors' schedules were not correct.

A debtor's attorney is not required to sign the schedules. FED. R. BANKR. P. 9011(a) ("Every . . . paper, except a . . . schedule . . . or amendments thereto, shall be signed by at least one attorney of record . . . .") (emphasis added). Therefore, in this case, Dietrich was not required to sign the schedules. There are no possible "signing" sanctions.

However, another rule subsection must be considered relating to representations made to the court. FED. R. BANKR. P. 9011(b). "By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [list of four different categories]." Id. (emphasis added). Dietrich submitted the Debtors' erroneous schedules to the court. He therefore faces "presenting" sanctions unless a reasonable inquiry was made.

The court now believes that a reasonable inquiry was not made by Dietrich. In this internet age, determining whether a debtor owns property is simple. The court will explain.

Go to the Ingham County, Michigan website using Google or some other preferred search engine. Click on "Onsite services." Click on "Equalization – Property search." Click on "Property and land search." In the space for "Owner name," type in the debtor's name. A listing will appear showing all real properties that the debtor has an ownership interest in. (It should be noted that the list may include other persons with

19

the same name that own real property in the county.)  The listing will also disclose the address of the property and the assessed value of the property.

The court did a search using the Ingham County website.  In less than five minutes, the search disclosed that Buck Hale and Mark Hale (one of the Debtors) owned two parcels of property in Stockbridge, Michigan.  Dietrich, or one of his paralegals, could easily have made the same type of "reasonable inquiry."  Further, a copy of a positive or negative result could be made for inclusion in a debtor's file, or scanned for an electronic record.

The court realizes that this analysis may be hindsight.  It will not hold a hearing regarding possible sanctions for violation of the "presentment" requirement without first making a reasonable inquiry.

Based upon the court's review of its docket and the papers in this case, during the two years and ten months this case has been pending, Dietrich has signed and filed a number of motions or objections that were withdrawn shortly before a hearing took place.  In some instances, the withdrawal was prior to an evidentiary hearing, subject to a scheduling order, which required time and expense by not only the Trustee, but also the court.

Considering the entire record as a whole, based upon an objective analysis, it appears that Dietrich may have requested some relief and interposed some objections for improper purposes which have caused unnecessary delay and needless costs of litigation. FED. R. BANKR. P. 9011(a).  The court will not conduct a show cause hearing at this time. FED. R. BANKR. P. 9011(c)(1)(A).  Rather, the court will merely warn Dietrich to not engage in future conduct of this type.  Dietrich is admonished to never again

20

engage in questionable litigation tactics.  No monetary sanctions will be considered by the court because it is not possible to hold a hearing before this judge leaves the bench.

All of the bankruptcy attorneys in this district, including Dietrich, should consider wise comments by Honorable David E. Nims, Jr., (this judge's predecessor on the bench), which were made twenty-seven years ago.  He basically said:  "It takes many years for an attorney to earn a well-deserved reputation.  It only takes one case to diminish or destroy a reputation."  What Judge Nims said then remains true now.  There is no reason in any case, adversary proceeding, or contested matter why *any* attorney would jeopardize or tarnish his or her reputation.

## IV.  CONCLUSION

The court will enter two orders:  first, an order dismissing the Debtors' motion to convert to chapter 13 with prejudice; second, an order denying any future exemption claim by the Debtors to the Stockbridge, Michigan real property.  No order is now necessary regarding possible monetary sanctions.

Dated this 27th day of June, 2014
at Grand Rapids, Michigan

                                                 
Honorable James D. Gregg
United States Bankruptcy Judge

21